oral argument not to exceed 15 minutes per side. Mr. Spellesey, you may proceed for the appellant. Thank you. Good morning, Your Honors. May it please the Court. My name is John Spellesey and I represent Appellant Aaron Loines herein. I'd like to reserve five minutes, Your Honors, for rebuttal if I could. Yep, that's fine. You may proceed.  There's a single assignment of error in this case and that is that the trial court erred in denying appellant's motion to suppress the warrantless search of his vehicle on April 30th of 2020. The standard of review in this case for the factual issues is clear error and as to the issues of law is de novo. Appellant argues that the trial court erred in denying appellant's motion to suppress as the officers did not obtain a warrant for the vehicle and the plain view exception alleged by the government and upheld by the trial court is not applicable in this case. The law is well settled and really not arguing about the law so much in this particular case. Coincidentally, it's U.S. v. Mathis, which was the Sixth Circuit case in 2013 as cited in our brief, which set forth four factors that must be satisfied in order for the plain view doctrine to apply. First, the contraband must be in plain view and a review of the facts in this particular case makes that first factor relevant. Secondly, the incriminating character must be immediately apparent to the officer. In this particular case, we argue that it is not immediately apparent and that is clear from the testimony of the officer as well. Back to the first factor, why do you say it's not in plain view? Is that because of the trespass? I think the trespass issue goes hand in hand with element one. I think when you talk about the fourth factor, the officer's access to the item must be lawful, right? And we submit to the court that there was a trespass in this particular case. The testimony was that not only was he touching the vehicle, but he had to cup his hands to look through heavily tinted windows. So I think those two issues kind of go hand in hand. Is it really in plain view when you need to cup your hands, touch the vehicle, look through tinted windows to see what's in the vehicle? Let me ask you, and I understand that argument, what about Lt. DePenny who said, yeah, I see it as well, and he did touch the vehicle. What do we do with that? I think, again, Lt. DePenny is the second, that's after it was announced by Detective Kopchak. And we're in an era where body cameras are present. Officers know there's body cameras present. Officers see this vehicle nine days earlier. I submit to the court that they're going to search this vehicle because they saw it involved in a drug deal nine days earlier. And the ends can't justify the means. Because they saw that same vehicle in a drug deal which came from that house. That doesn't justify the plain view doctrine. They could have obtained a warrant for that vehicle very easily. They chose not to obtain a warrant for that vehicle. So they chose to rely upon the plain view doctrine. And what prevents any officer from saying, I see contraband, I see dope, and we don't hear about those cases where no dope's actually announced it to the camera because no charges result from it. The only ones we hear about... What I struggle with is, in the motion to suppress that was found, sort of the argument that the defendant was made is, this is a credibility issue. But it seems once we made it to the suppression hearing, there was no challenge to Detective Kopchak's credibility. And that's sort of what I struggle with. I acknowledge your argument that officers can say whatever on the dash cam, but nothing was made to challenge either DePente's statements or Kopchak's testimony. I think Mr. Vey, who was the counsel in the trial court, when he cross-examined Mr. Kopchak, which was telling, was the question, you suspected or guessed it was contraband? Answer, yes. I submit to this court that suspected or guessed does not equate to being immediately apparent as required by the case law. Objectively, what was viewed when the officer looked through the window of the car, because what appeared objectively to the viewer would determine whether or not he reasonably could have guesstimized that it might have been contraband or evidence of a crime or something along those lines. So if we're going to, the district judge has upheld, in his view, the credibility of the officer, but did the officer see anything that justified, provided probable cause, that justified his entering the vehicle to proceed with the search? What actually was viewed? That's our argument. The crux of the argument, Your Honor, is that you have before you, the video you have before you, the photos. I submit to you that a picture and the video is worth a thousand words. You have a photo exhibit four, I believe, three and four, the government's own, and even by the officer's own testimony, Detective Kopchak's own testimony, he said it was covered by a black and mild, and you see the photo, and that's from inside the vehicle right over the console. So, yes, we are asking you to review the facts of this matter based on a clear error standard, because we believe that it was improbable that anyone could see what's under lottery tickets and a black and mild. Let me make sure I understand your position with respect to the photograph. Your argument is that the photograph is taken from the vantage point of, let's say, the driver's seat and would not depict accurately what an officer would see peering through the window from the other side of the car. That's correct. Okay. That's correct. But furthermore, even taking that as it is, looking at the photo, I don't think one can reasonably say what's underneath the lottery tickets and the black and mild, based upon a reasonable degree of certainty. In the suppression hearing, both the government and the court, in its questioning as well, made a concerted effort to question Detective Kopchak about the interaction nine days earlier. Now you can't bootstrap, that could have been material for a basis for a warrant, but they did it in order to justify the plain view. It says in the transcript, page 15 of the transcript, a bag of heroin or some sort of narcotics, not marijuana, that was sitting in the center console, that was able for me to see. And then, as you can see in the video, I let everybody know that there was a bag of dope sitting in the car that we watched, that we watched do that deal a few weeks earlier. What's telling about that testimony is that it's our position they were going to search that vehicle because they saw that vehicle nine days earlier and they did a controlled buy from that. But they didn't have a warrant for it. I'd ask that the court review the exhibits and the factual findings based on clear error. Joint Exhibit A, the video from Detective Oliver, unfortunately Mr. Vey didn't have an opportunity to test the tints because the vehicle was disposed of. To my understanding the government never tested the degree of tint and presented no evidence on the degree of tint. But on the video you can see that, and the photos, and by his own admission, the windows. The vehicle was disposed of. Was it in the possession of the government at that time? It was in the possession of the government. It was towed. It was in the possession of the government. And then my understanding is it was repoed by the lender, I believe. But again, on cross-examination, you know, it's the appellant's position that suspect or guess does not equate to being immediately apparent, required for the plain view exception to apply. As I stated previously, there was a concerted effort by the government to bootstrap this interaction nine days earlier. And they had that information, yet the vehicle wasn't included in places to be searched. And they could have certainly obtained a search warrant for that vehicle after searching the home. Finally, we would, the appellant would argue that a trespass occurred, as stated in the brief. And while there's not a lot of issues directly on point, or not a case law directly on point, similar to the facts of this particular case, certainly under these facts where the officer admits that he had to touch the vehicle, cup his hands, look into the, to look through the tent to see anything in the vehicle, much less what he argues that he saw. Okay, Mr. Stabelis, your initial time has expired. Do you wish to use some of your rebuttal time now? Just briefly, Your Honor. The ends can't justify the means, and we'd ask that this court reverse the trial court's denial of appellant's motion to suppress. Thank you. Good morning. May it please the court, Matthew Call for the government. The district court properly concluded that the officers legally searched the defendant's car under the plain view exception to the Fourth Amendment, and therefore we ask this court to affirm the decision denying the defendant's suppression motion. As the court's aware, there are four obvious factors are, and we believe they were satisfied in this case. First, the object was plainly visible from outside the car. Yes, the windows were somewhat tinted, but they weren't tinted to a degree such that it was impossible to see through the windows. There are times in the videos, particularly in Exhibit 3, Lieutenant DePente's video, where you can clearly see, right on the camera, things that are inside the car, the steering bag, in this case, it's clear that you can see through the windows. The district court, therefore, did not clearly err in reaching the finding that the objects were plainly visible. The district court accepted Detective Kopchak's testimony, and there's no reason to overturn that credibility finding. Counsel, one problem there is that the testimony at the suppression hearing indicating what was viewed doesn't suggest that there was any thing clearly viewed that could be thought to be contraband or evidence that would have justified entry into the vehicle. So even if we say this alleged trespass is not dispositive, this other problem of what was testified as to what was viewed doesn't sound as substantial enough for the officers to have entered the vehicle to have searched further. What do you say about that? My response to that, Your Honor, that goes to the factor of whether it was readily apparent. One of the four factors for plain view, the court found it was. There are a number of factors... But the court's finding can't be at variance with the facts of the matter and at variance with the testimony. But go ahead. Certainly. And my colleague would have this court focus on sort of a narrow fact. It was a bag of powder in the consul, and bags of powder can be legal. There's additional facts that I think turn this. And in the Garcia case, this court held that there's several factors that this court should consider when evaluating this factor. A nexus between the object and the investigation, the intrinsic nature of it, and whether the officers had facts then available to them to determine probable cause. This wasn't a random car in a parking lot. This was a specific car that just nine days earlier had delivered drugs to a controlled buy. And it wasn't in a random location. It was parked on the street in front of a house that was then being searched as part of a drug investigation. And third, this wasn't a random observer. This was a very well-trained narcotics investigator who had participated in this investigation, had actually obtained samples of drugs that looked, as he testified, just like the drugs in this car. So when you combine all those facts, I think it does satisfy the readily apparent factor for the plain view test. The problem was that the car had been seen nine days previously, allegedly, in connection with a drug transaction. And it was parked at a house where there was a warrant not for this defendant. And you had plenty of, the officers had plenty of time and opportunity to get a search warrant. I don't know if the warrant would have been granted or not, but the facts are very thin that after nine days and the registration of the car wasn't checked to be identified with a particular perpetrator or this defendant. It was just parked on the street. It wasn't, so I mean... Those are relevant facts, Your Honor, but who owned the car isn't relevant to whether there was probable cause to believe evidence of a crime was in it. So I don't think that's an entirely dispositive fact. Well, I'm having trouble finding what the evidence of the crime, that there was evidence of crime in the car. I haven't heard anything to suggest that the police were justified in determining that or concluding there was evidence of a crime in the car. But within 15 seconds of walking up to the side of the car, the officer yelled to one of the other officers, hey, tell Yaz there's a bag of dope in the car. So the... Even though he didn't really view a bag of dope. That's the problem. Well, he did, Your Honor. I disagree with that. He saw a small piece of plastic sticking from under some other items and claimed that he thought there might have been some powder in there. But even by his own testimony, it's very equivocal as to what he viewed. And I would disagree with that for two reasons, Your Honor. Number one, if you go to Exhibit B, which is one of the body cameras, you can see Detective Kopchak walk up to the car at approximately five minutes and 15 seconds into the video, maybe it's five minutes into the video. Within 15 seconds, he exclaims to the other officers, he actually laughs out loud. You can hear sort of a chuckle. Tell Yaz there's a bag of dope in the car. Not I think, not there might be. He's pretty certain at that point. And it's based on all the other factors, his trading experience, this particular car's connection to other drug transactions, and the location at which it's parked. The picture that Mr. Loyne's focus is on is a picture that's taken from directly overhead inside the vehicle after they've searched it. But from the side, the view was different. And you have that based on Detective Kopchak's testimony, which is also corroborated when Lieutenant DePinty, whose video, I forget if it was three or C, there was a mix-up in the numbering. When he comes over to the car, he first looks in the driver's side window, doesn't really say anything. Someone says to him, you can see it better from the other side. He walks behind the car, over to the other side, looks in the window. Within five to ten seconds, oh yeah, I see it. So we think that that's sufficient evidence from which the district court reasonably determined that the incriminating nature of that bag of powder was readily apparent and that the powder could be seen. If we find that there was a trespass here, how does that impact the Plain View Doctrine analysis? So the trespass theory is an interesting one, but I think that my colleague is trying to extend both Joyne's and Taylor v. Saginaw a lot further than the holdings of those cases permit. Sorry. Excuse me. In Jones, it bears noting that the court did say the exterior of the car is thrust into the public eye and examining it does not constitute a search. In Jones, what the government did was physically attach a device to the object, to the car, let me try that again, physically attached an object to the car for 28 days, which generated 2,000 pages of precise location data. And the Supreme Court held in that case, when the government trespassed on a constitutionally protected area to obtain information, then there's a problem. Where Mr. Lawrence's argument falls flat is on that second factor, to obtain information. There's insufficient evidence based on the record below that Detective Kopchak's actions were anything other, were done to obtain information. This entire trespass. What was he looking into the car for if not to obtain information as to what was in it? And there are a host of cases that say that people can look into the car to obtain information. He was on public property. He's legally allowed to do it. It is the combination of touching the car to obtain information that's not developed in the record. In the record, there is literally one question relating to this. That question is at page ID 748. Did you place your hands on the window to get a better vantage? Answer, sure. That's the only question directly relating to the trespass theory that was ever raised below. There is, essentially what Mr. Lawrence is asking this court to do is to infer from that question that he couldn't, that Detective Kopchak couldn't have seen through the window without that. And that by touching the car, that and that alone is what enabled him to overcome the tint and see through that. That would be viewing the evidence in the light most favorable to Mr. Lawrence. That's not the proper standard of review in this case. The only, they have arguably established that he touched the car. If just touching a car is sufficient to be an unconstitutional trespass requiring suppression, that would be taking Jones and Taylor further than any other court has done. And really any time an officer touches an object belonging to a person, then it's somehow tainted. And I think that's taking it just a step too far. In Taylor, there were 15 different times that officers or parking enforcement agents marked a car. And for two hours or however long, I forget if it says in Taylor how long the period of time, that mark remained on the car and that allowed the officer to obtain information. How long had that car been parked there? There's no evidence in this case that touching the car allowed the officer to obtain information. The second factor that's necessary both under Jones and both under Taylor and under Taylor v. Saginaw. So I think the trespass theory, while intellectually interesting, based on the facts developed here, falls short. But it seems like you're arguing that there wasn't a trespass. Let's say that we decide that there was a trespass. How does that impact the plain view argument? It affects it a couple ways. First of all, if there was a trespass, not all trespasses constitute searches. And not all searches are unreasonable. So I think you would have to find all three factors are met in order to reverse the district court in this case. As we cited throughout our brief and as the Supreme Court and this Court has held before, not everything rises to the level of a constitutional violation. There are certain things that are so minor and so trifling that they don't rise to that level. And I'd argue that touching a car's window for, based on the video, which was at most 10 seconds, doesn't rise to that level. He didn't generate any evidence. He didn't create any information by doing it. If he had taken a 1,000 watt spotlight and shined it through the window to get through the tent, that would be okay under all the cases saying that an officer can shine a flashlight into it. But if he actually touched the window while doing so, that would somehow cross the line. That seems like an awfully thin line. And I think it sort of suggests what Judge Alito suggested in his concurrence to Jones. This trespass theory could lead to some, I forget if the word he used was absurd, but unusual results. And I think that's where you go. If this Court is inclined to consider this argument, I'd urge it to at least consider remanding first because the factual record is not very well developed. It is that one question on page ID 748, did you place your hands on the window to get a better vantage? Yes. What we don't know is how long. Could he see without it? Did he see the dope before touching it or not? Did it leave any marks? How long did it take? These are all unanswered questions and the reason they're unanswered is because this trespass theory was not briefed. It was not in his motion to suppress. Rule 47 of the Rules of Criminal Procedure requires a defendant to give the reasons for his motion and the basis for it. It was nowhere in there. This was a new theory that defense counsel came up with during cross-examination and during closing argument at the suppression hearing and the government really didn't have an opportunity because it had no advance notice that this was going to be the theory of suppression in this case. The district judge described it as a sneak attack and Mr. Vey, who represented Mr. Loins in the district court, agreed that yes, it was a sneak attack. So if the Court is inclined to at least consider this argument, before doing so, we'd ask the Court to remand for more information. But I don't really think it's necessary because under the Jones test, under the Taylor v. Saginaw test, there's no evidence that what was done was done to obtain information. Did you touch the window? Sure. It may have been that may have been sufficient to constitute infringement on a constitutionally protected area, but it certainly didn't satisfy the second factor to obtain information. And I'm not even sure it was in the first information because as this Court is well aware, cars have a lower expectation of privacy, particularly when they are parked in public spaces. The district court seemed to put much of its focus on how quickly Officer Kopchak spotted what he believed to be drugs. Is that really much of a factor here? I mean, maybe that goes to the officer's experience, I suppose. But we have a case where there's not a lot of corroborating evidence from a body camera or photographic evidence. I mean, how much weight should be placed on how quickly an officer thought he sees drugs? Given my colleague's the evidence wasn't in plain view, how quickly he reached that conclusion, I think, relates to that. And also due to the readily apparent nature of it, within 10 to 15 seconds the officer said, tell Yaz I see dope in the car. So I think the speed with which the officer concluded that that was the case is relevant. Ultimately, Mr. Spelcy makes the argument that the police were going to search no matter what. There's no evidence in the record of that. The officers followed the proper steps. They satisfied each of the elements of the plain view exception. And for that reason, we'd ask this court to affirm the district court's decision denying the motion to suppress. Okay. Thank you, Counsel. Thank you, Your Honors. Does it make a difference that the officers seemingly targeted this car for an inspection of the interior of the car when the officers were not at that location in connection with the driver or owner of the car, but were there to serve a warrant in a house for a different individual, another individual? I think that factors in to it in the testimony of Detective Kopchak and the video as to where he says he's taking cover behind this vehicle, but yet he's not even present when they, he's not even there yet when they enter the home. They had seen this vehicle before and they see it again and it's a pellent's position. That's why they're at the vehicle and that's why they are there. There is that discrepancy which could lead one to that conclusion, certainly. Is there, what do you, what would you cite to us as the best case that would support your argument here? I mean, the government relies on a couple of cases, Brown and Pacheco in terms of plain view. I think Brown is actually a very good case for a pellent because it's easily distinguishable. In that case, you have clear indications as to what he saw. As pointed out by the court in questions, it was what was viewed. What was viewed in this case? That's important, right? What was viewed was black and mild, lottery tickets and some plastic, okay? Versus what's viewed in Brown, Texas v. Brown as plain view. That is a balloon that's tied off that appears to have substance in it that the officer has experience and gives a very good description of that. In this particular case, there's very little description and then when followed up by, and I'm sorry to repeat this but I think it's important, the question of you suspected or guessed it was contraband. Answer correct. This isn't about suspecting or guessing. That's not the standard when you look at is it the incriminating character immediately apparent. What's immediately apparent about lottery tickets or a black and mild? If you look in the mic, I may have wrappers all over my counsel, gum wrappers, etc. Can you see through that? Do you think that the court even needs to address this trespass argument to grant the relief that you're requesting for your client? I do not believe if this court, which has the power to review the facts and emotion to suppress under the standard of clear error and looking at the videos and the photo, I don't believe you ever get there. But if you do get there, this is not some sneak attack. This was briefed as, and it's the government's burden. This is a warrantless search. They have to prove the four factors to the plain view doctrine, one of which that you're lawfully present. So if you're not lawfully present and lawfully looking through the window and you're trespassing to see what otherwise could not be seen, then you get to that trespass theory. But I don't think you get there because what was viewed is important. What was viewed is critical. And you can't guess or suspect. You have to be reasonably certain. Thank you. Okay. Thank you, counsel, both of you, for your arguments this morning. Mr. Sabalasi, we note that you have taken this case under the Criminal Justice Act. You know, that certainly is a service to your client individually, but also to the system at large. And we very much appreciate attorneys who take on cases under this Act and for your representation today. So thank you. Thank you very much. We appreciate it. And of course, Mr. Call has always appreciated the government's argument. Thank you both.